# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA KENDRICK, individually and as successor in interest to her now deceased husband, GARY KENDRICK,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, San Diego Sheriff WILLIAM GORE, San Diego Sheriff's Deputy STEVEN BLOCK, and DOES 1 through 50,<br><br>Defendants. | CASE NO. 15CV2615-GPC(RBB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>**[Dkt. No. 53]** |

On May 8, 2017, Plaintiff Cynthia Kendrick filed a motion for leave to file a Second Amended Complaint to name eight additional defendants and remove four causes of action. (Dkt. No. 53.) Defendants filed an opposition. (Dkt. No. 56.) Plaintiff then filed a reply in support of her motion. (Dkt. No. 58.) For the following reasons, the Court GRANTS Plaintiff's motion for leave to file a Second Amended Complaint.

## Background

On November 11, 2015, Plaintiff Cynthia Kendrick ("Plaintiff" or "Cynthia") filed a Complaint against Defendants County of San Diego, Sheriff William Gore,

Sheriff's Deputy Steven Block, and DOES 1 through 50. (Dkt. No. 1, Compl.) A First Amended Complaint ("FAC") was filed on April 26, 2016 naming Sheriff's Detective Matthew Mays as an additional defendant. (Dkt. No. 16, FAC.) According to the FAC, on March 27, 2015, Plaintiff's husband Gary Kendrick ("Gary"), who was struggling with depression, was attempting to kill himself with a shot gun. (Id. ¶¶ 38-39.) Cynthia dialed 911 but hung up before speaking to anyone. (Id. ¶ 38.) She then ran outside and told a neighbor, Ryan Ward, that Gary was attempting to kill himself. (Id. ¶ 39.) At that time, Cynthia noticed that the cops had arrived. (Id.) Ward told the officer that arrived at the house that Gary had a shotgun and was trying to kill himself. (Id. ¶ 40.) Gary then came out of the house holding a vodka bottle in one hand, and a shotgun by the barrel outstretched in his other hand. (Id. ¶ 41.) Gary shouted, "Bring it on, mother fuckers!" while keeping his arms outstretched. (Id.) One officer told Gary to drop the weapon while Defendant Deputy Steven Block fired two shots at Gary, and after Gary dropped to the ground, Block fired two more shots that eventually killed him. (Id. ¶ 42.)

After watching her husband die, Cynthia attempted to go to him but the deputies pulled her away and placed her in a locked police vehicle with the windows up despite her cries to be released to get air. (Id. ¶ 47.) She was then taken to the police station to give a statement from 9:30 a.m. to 4:30 p.m. against her will. (Id. ¶ 48.) Upon returning home, Plaintiff had to wait outside for nearly six hours, because a search warrant had been executed, and officers were searching her house. (Id. ¶ 49.) She alleges that the search warrant was obtained without probable cause. (Id. ¶¶ 50-59.)

On behalf of her husband, Plaintiff is bringing causes of action for (1) excessive force under the Fourth Amendment; (2) denial of medical care under the Fourth Amendment; (3) Monell[1] liability; (4) battery; (5) violations of the Bane Act, Cal. Civ. Code section 52.1; (6) violations of the Americans with Disabilities Act, 42 U.S.C. § 12132; (7) violations of the Unruh Civil Rights Act, California Civil Code sections 51,

---

[1] Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658 (1978).

51.7; (8) negligence; and (9) negligent hiring, retention, and supervision. (Dkt. No. 16, FAC ¶¶ 15-21.) In her own capacity, Plaintiff alleges causes of action for (10) wrongful death; (11) violation of substantive due process; (12) intentional infliction of emotional distress; (13) unreasonable seizure under the Fourth Amendment; and (14) unreasonable search under the Fourth Amendment. (Id. ¶¶ 22-25.)

On May 5, 2016, the Court issued a Scheduling Order which set the deadline to seek leave to amend the complaint on July 5, 2016. (Dkt. No. 19 at ¶ 1.) Plaintiff filed the instant motion for leave to file a Second Amended Complaint on May 8, 2017. (Dkt. No. 53.) Plaintiff seeks to name as defendants the eight police personnel who were involved in the unlawful detention of Plaintiff and unlawful search of her home. (Dkt. No. 53-2, McBride Decl. ¶¶ 9-10.) She also seeks to remove the causes of action for denial of medical care under the Fourth Amendment, violations of the Americans with Disabilities Act, violations of the Unruh Civil Rights Act, and intentional infliction of emotional distress. Fact discovery closed on April 10, 2017 and the expert discovery deadline of May 26, 2017 was vacated pending a decision on the motion quash by the Magistrate Judge.[2] (Dkt. Nos. 40, 41, 47.)

## Discussion

### A. Federal Rule of Civil Procedure 16

Federal Rule of Civil Procedure ("Rule") 15(a) provides that leave to amend shall be freely given when justice so requires and the standard is applied liberally. Fed. R. Civ. P. 15(a). However, once a district court has established a deadline for amended pleadings, and that deadline has passed, Rule 16 applies. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992). Rule 16 provides that a pretrial scheduling order can only be modified "upon a showing of good cause." Fed. R. Civ. P. 16(b). "Good cause" focuses on the diligence of the party seeking an amendment. Johnson, 975 F.2d

---

[2] A hearing on the motion to quash was held and an oral ruling was made at the hearing. (Dkt. No. 51.) A new deadline for expert discovery has not yet been set.

at 609. The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. See Zivkovic v. S. Cal. Edison Corp., 302 F.3d 1080, 1087-88 (9th Cir. 2002). Prejudice to the non-moving party, though not required under FRCP 16(b), can supply additional reasons to deny a motion. Coleman, 232 F.3d at 1295. The Ninth Circuit noted that "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.; see Sugita v. Parker, 13cv118-AWI-MJS(PC), 2015 WL 5522078, at *2 (E.D. Cal. Sept. 16, 2015) (counsel's carelessness or inadvertence fails to establish "good cause"). Rule 16's good cause standard is more stringent that the liberal amendment standard under Rule 15. AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 952 (9th Cir. 2006).

**I.     Good Cause**

Defendants argue Plaintiff cannot demonstrate good cause because they produced all patrol and Homicide Division investigative reports on July 25, 2016[3] that identify all eight individuals and their roles in the incident, yet she did not file a motion for leave to name these defendants until May 8, 2017. In response, Plaintiff explains that, although she received the reports and was aware of the eight individuals early in the litigation, she was also aware of all the other Sheriff's Department personnel, over 70 individuals, who were involved with the incident. It was not until she took the depositions of fifteen Sheriff's Department detectives, deputies, and other personnel in March and April 2017 that she specifically learned the identity of the individuals that detained her and those that were involved in the illegal search of her home.

Even where the plaintiff had prior knowledge of the necessary facts or theories to seek leave to amend, the district court may consider the "rights of the parties, the

---

[3] Even though Defendants argue that Plaintiff had all of the necessary information on July 25, 2016, good cause would still need to be demonstrated since the deadlines to file any motion to amend the complaint passed on July 5, 2016.

- 4 -                                                                                    [15CV2615-GPC(RBB)]

ends of justice, and judicial economy" when deciding whether Rule 16's good cause standard has been met. United States v. Dang, 488 F.3d 1135, 1143 (9th Cir. 2007). "Rule 16 was not intended to function as an inflexible straightjacket on the conduct of litigation . . . instead, it was intended to insure the efficient resolution of cases and, most importantly, minimize prejudicial surprise." Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 684 (3d Cir. 2003) (quoting Lamborn v. Dittmer, 873 F.2d 522, 527 (2d Cir. 1989)).

Districts courts have used the principles in Dang, focusing on the "rights of the parties, the ends of justice, and judicial economy" to apply a more flexible standard. See In re Charles Schwab Corp. Sec. Litig., No. C 08-01510 WHA, 2009 WL 3429742, at *3 (N.D. Cal Oct. 22, 2009) (granting leave to add additional claims even though there was an eight month delay because the claims were in the same transaction or occurrence, plaintiffs were better able to add these claims after discovery, discovery would not need to be reopened, the defendant had no claims of prejudice, and it was not apparent that this would affect future litigation); Crime, Justice & Am., Inc. v. Jones, No. 2:08-cv-00394-GEB-EFB, 2013 WL 142084, at *1 (E.D. Cal. Jan. 11, 2013) (finding good cause to allow leave to amend when the plaintiffs' delay in filing leave to amend was due to the defendant's failure to turn over important information until right before summary judgement motions were filed). One district court held that plaintiffs were reasonably diligent when they did not seek leave to amend the complaint until after reviewing the internal affairs file to determine which deputy was involved even though they had a list of the individuals involved in the incident. See Ceballos v. Contra Costa Cty., No. C 13-04584 LB, 2014 WL 2582541, at *3 (N.D. Cal. June 9, 2014) (finding good cause even though the plaintiff had information about the names of the deputies in a letter, it did not identify which deputies "entered his cell or give any description of their actions" and Plaintiff's counsel repeatedly stated his intent to seek leave to amend to defense counsel).

On April 26, 2016, pursuant to a joint motion, Plaintiff filed a First Amended

Complaint adding Detective Matthew Mays as a defendant after receiving a copy of his search warrant. (Dkt. No. 16.) On July 25, 2016, defense counsel provided Plaintiff with all reports, including patrol and Homicide Division investigative reports, concerning the incident. (Dkt. No. 56-1, Chapin Decl. ¶ 2.) Discovery issues arose in August 2016 that were subject to a motion to compel. (Dkt. No. 23.)

Then from September 2016 to February 2017, discovery on this case was essentially placed on hold. On September 8, 2016, a Notice of Change of Attorney was filed by Defendants. (Dkt. No. 26.) On October 11, 2016, according to a joint motion filed by the parties, it indicated a new attorney to replace prior defense counsel would not start until October 19, 2016 and that defense counsel would not be available during the last week in October. (Dkt. No. 34.) Subsequently, on November 8, 2016, the parties filed a status report and a joint motion to modify the case management schedule. (Dkt. Nos. 38, 39.) The parties informed the Court that certain issues required an extension of the dates in the case management order. They included the unexpected retirement of the original Deputy County Counsel representing Defendants, the unavailability of the current Deputy County Counsel representing Defendants from December 2016 to early February 2017 because of two jury trials, and Plaintiff's need to amend the complaint to add additional defendants whose identities were only recently ascertained. (Dkt. Nos. 38, 39.) Both parties asserted that they had been diligent in pursuing discovery and both parties acknowledged that in civil rights cases, the parties do not learn the identity of the majority of the individuals involved until after written discovery is complete. (Dkt. No. 38 at 2, 5-6[4].) The status report noted that all additional individuals that should be named as defendants and individuals that should be deposed have been identified; however, due to defense counsel's unavailability, it was understood that depositions would not be able to be completed until the end of March 2017. (Dkt. No. 39 at 4.) In November 2016, Plaintiff was intending to stipulate with Defendants that in lieu of naming all the individual

---

[4]Page numbers are based on the CM/ECF pagination.

defendants, she would only name one such deputy in his supervisory capacity. (Dkt. No. 38 at 4.) Once the parties resolved this issue, Plaintiff indicated that she would file a motion for leave to amend by December 1, 2016. (Id.)

However, instead of what the parties proposed, Plaintiff waited until depositions were completed before she filed her motion for leave to amend. She explained that she waited until the completion of depositions to file her motion in order to preserve the parties' and the court's time and resources. Rather than naming every individual identified in the reports provided by Defendant, and calculated to be around $70^5$ by Plaintiff's counsel, she wanted to ensure she named the proper parties responsible for the alleged violations. (Dkt. No. 53-2, McBride Decl. ¶ 10.)

Due to defense counsel's unavailability, Plaintiff was not able to conduct the depositions until March/April 2017. (Dkt. No. 53-2, McBride Decl. ¶ 8.) Between March 6, 2017 and April 10, 2017, Plaintiff took the depositions of fifteen Sheriff's Department detectives, deputies, and other personnel and Plaintiff's counsel received the last of the transcripts of the depositions on April 24, 2017. (Id.) Plaintiff claims that it was at these depositions that she learned the identity of the Sheriff's Department personnel that detained Plaintiff and also the identity of the other detective who was present at and responsible for the search of Plaintiff's home. (Id. ¶ 9.) Two weeks later, on May 8, 2017, Plaintiff filed the instant motion for leave to file a Second Amended Complaint. (Dkt. No. 53.)

Even though the police reports contained the names of the proposed eight defendants, the reports also contained the names of many other individual that were involved in the incident. Therefore, it was not unreasonable for Plaintiff's counsel to wait until the depositions were taken to determine the specific individuals involved in the alleged unlawful seizure of Plaintiff and unlawful search of her home and then to file a motion for leave to amend.

---

[5] Although the Court did not count the number of individuals named in the reports handed to Plaintiff on July 25, 2016, there are many more individuals involved in the incident than have been named. (Dkt. No. 56-1, Chapin Decl., Exs. A-F.)

In determining good cause, the Court looks at the time Plaintiff learned the identity of the eight proposed defendants and the filing of the instant motion. Here, less than a month passed. Therefore, Plaintiff was diligent when she sought leave to amend. See Schwedt v. Int'l Fidelity Ins. Co., 28 F. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning of facts from a witness' deposition did not constitute diligence under Rule 16 in seeking leave to amend); Experexchange, Inc. v. Doculex, Inc., No. C-08-3875 JCS, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts and after fully briefed summary judgment and without explanation for the delay did not meet the good cause standard under Rule 16). Moreover, Plaintiff should have known since the filing of the first amended complaint that a motion to add additional defendants was forthcoming, and in fact knew in early November 2016 that Plaintiff intended to file a motion seeking leave to amend. Despite the passing of the deadline in the scheduling order, Plaintiff has demonstrated good cause for the Court to consider her motion for leave to file a Second Amended Complaint.

## II.     Prejudice

Defendants next argue that they would be prejudiced because they lost an opportunity to present a Rule 68 early settlement offer, and discovery was propounded without inquiry into the damages from the conduct of these additional defendants. (Dkt. No. 56 at 5.) Plaintiff asserts that damages will remain unchanged by adding the unknown DOE defendants as they have always been named as a defendant.[6] (Dkt. No. 58 at 4.) Moreover, she argues that because Plaintiff's injuries and damages are not impacted by the number of defendants who share responsibility for her injuries and damages, granting leave to amend will not impact Defendants' ability to make a Rule 68 offer.

---

[6] For the unreasonable search and seizure causes of action, the FAC lists the defendant as "Unknown Department Deputies." (Dkt. No. 16, FAC at 24-25.) Defendants were on notice that the unknown deputies would eventually get named as defendants once the identities of these deputies became known during discovery.

The Court agrees with Plaintiff that no prejudice has been shown. Plaintiff does not seek any additional damages for naming the DOE defendants and Defendants provides no legal authority that there is prejudice based on a "lost" opportunity to present a Rule 68 offer by granting a motion for leave to amend. Defendants are not precluded from tendering a Rule 68[7] offer. Furthermore, Defendants do not dispute Plaintiff's assertion that all key documents and all key depositions, including each of the proposed defendants, have all taken place so fact discovery does not need to be reopened.

Thus, because the primary purpose of the Rule 16 limit on amendment is to encourage efficient litigation and minimize prejudicial surprise, consideration of the amendment should be allowed because it does not significantly prejudice either party. See Lamborn, 873 F.2d at 527.

## B. Federal Rule of Civil Procedure 15

Under Rule 15(a), leave to amend a complaint after a responsive pleading has been filed may be allowed by leave of the court and "shall freely be given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court. See Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985). This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." Id.

Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. Genentech, Inc. v. Abbott

---

[7] The "plain purpose of Rule 68 is to encourage settlement and avoid litigation." Marek v. Chesny, 473 U.S. 1, 5 (1985) ("The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits.").

Labs., 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In assessing the propriety of an amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. Foman, 371 U.S. at 182; United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011). These factors are not equally weighted; the possibility of delay alone, for instance, cannot justify denial of leave to amend, DCD Programs, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

**I. Undue Delay**

Defendants argue that Plaintiff has delayed too long the filing of her motion for leave to amend because Defendants produced the relevant police reports to Plaintiff on July 25, 2016 revealing which officers were involved in the incident. (Dkt. No. 56 at 4–5.) Therefore, based on the date the reports were given, Plaintiff's delay of 10 months is significant. (Dkt. No. 53.) Plaintiff argues that she did not have all of the information in July 2016, but that the information was not sufficiently narrowed down until April 10, 2017 after the depositions were completed. (Dkt. No. 53-1 at 5.) Thus, based on the completion of the deposition, Plaintiff filed her motion less than one month after having learned the identities of the individuals responsible for the alleged unlawful seizure of Plaintiff and unlawful search of her home.

Undue delay addresses not only whether the motion was filed within the time allotted, but also "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen, 465 F.3d at 953; See Jackson v. Bank of Haw., 902 F.2d 1385, 1388 (9th Cir. 1990) (denying leave to amend because the plaintiffs did not cite any facts or theories supporting the fact that they did not have important evidence until after additional discovery completed). However, "[u]ndue delay by itself is insufficient to justify denying leave to amend." United States v. United Healthcare Ins. Co., 848 F.3d 1161,

1184 (9th Cir. 2016).

As discussed above, Plaintiff argues that the she did not learn of the identities of the proposed defendants until April 2017 when the depositions were completed. See AmerisourceBergen, 465 F.3d at 953. Defendants have not made a showing of undue delay. In fact, several months of delay was caused by change in defense counsel and new counsel's unavailability due to trials in other cases he was handling.

Even if Defendants could show that Plaintiff had all of the relevant information at the time the reports were given in July 2016, such a showing of delay would by itself still be insufficient and would need to be supported by some showing of bad faith, prejudice, or futility. See Healthcare, 848 F.3d at 1184; Bowles, 198 F.3d at 758. As discussed below, no other factor has been met, therefore, even if undue delay was shown, it would not justify denying leave to amend.

**II.     Prejudice**

As discussed above in the Rule 16 good cause analysis, Defendants assert they will be prejudiced since they did not conduct discovery on damages for these additional proposed defendants and they lost the opportunity to make a Rule 68 early settlement offer. (Dkt. No. 56 at 5.) Plaintiff disputes Defendants' argument.

There must be clear prejudice to overcome the strong Rule 15 policy supporting liberal amendment. See Hurn v. Ret. Fund Tr. of Plumbing, Heating and Piping Indus. of S. Cal., 648 F.2d 1252, 1254 (9th Cir. 1981) ("Bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to facilitate a proper disposition on the merits.") (internal quotations omitted); United Healthcare, 848 F.3d at 1184 (allowing leave to amend because case was still early in litigation, amendment was not asserting a new legal theory, and amendment was first attempt to cure).

As discussed above, the Court similarly concludes Defendants have not demonstrated any prejudice. The damages Plaintiff seeks will remain the same as before the amendment and a Rule 68 offer can still be made. Moreover, Defendants have known that Plaintiff would be seeking leave to add unnamed defendants since the

filing of the complaint as the causes of action for the unlawful search and seizure alleges "Unknown Department Deputies." Defendants further knew that Plaintiff would be seeking leave to add additional defendants in November 2016. Lastly, no prejudice has been demonstrated it does not appear that discovery needs to be reopened. Defendants' assertions do not overcome the strong Rule 15 policy supporting a proper disposition on the merits. See Hurn, 648 F.2d at 1254.

### III. Futility

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). Courts ordinarily do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, and instead defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleadings are filed. Netbula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003) (citation omitted); Clarke v. Upton, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) ("However, denial [of a motion to amend] on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."); accord Green Valley Corp. v. Caldo Oil Co., No. 09cv4028-LHK, 2011 WL 1465883, at *6 (N.D. Cal. April 18, 2011) (noting "the general preference against denying a motion for leave to amend based on futility."). Arguments concerning the sufficiency of the proposed pleadings, even if meritorious, are better left for briefing on a motion to dismiss. Lillis v. Apria Healthcare, No. 12cv52-IEG(KSC), 2012 WL 4760908, at * 1 (S.D. Cal. Oct. 5, 2012).

Defendants assert that allowing leave to amend the complaint to add police personnel as defendants would be futile because they are government officials protected by qualified immunity. However, at this stage of litigation the Court is not ruling on the sufficiency of the proposed pleadings, but only on whether "no set of

facts" can be proven that would constitute a valid and sufficient claim.  See Miller, 845 F.2d at 214.  Plaintiff's proposed amendment to add the named officers satisfies this standard.  Moreover, Defendants have only provided conclusory arguments that the proposed defendants are protected by qualified immunity, a doctrine that is not easily disposed of in a one page analysis that Defendants provide.  See e.g. Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that qualified immunity sometimes requires "complicated analysis of legal issues"); Estate of Gonzales v. Hickman, No. ED CV 05-660 MMM(RCx), 2007 WL 3238722 at *3 (C.D. Cal. June 11, 2007) ("issue of qualified immunity is frequently nuanced and complicated.").

In conclusion, the Court concludes that Defendants have not met their burden to demonstrate that leave to amend should not be granted.  Accordingly, the Court GRANTS Plaintiff's motion[8] for leave to file a second amended complaint.

**Conclusion**

For the foregoing reasons, this Court GRANTS Plaintiff's motion for leave to file a second amended complaint.  Plaintiff shall file a Second Amended Complaint within three (3) days of the filing of this order.

The hearing set for June 28, 2017 shall be **vacated**.

IT IS SO ORDERED.

DATED:  June 22, 2017

HON. GONZALO P. CURIEL
United States District Judge

---

[8] In her motion, Plaintiff also argues that the amendment is proper under the joinder requirements of Rules 19 and 20.  Defendants does not address this issue in their opposition and appears to be unopposed.  The Court need to address whether joinder is proper as the issue is not disputed.